ACCEPTED
04-15-00398-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/31/2015 2:17:50 PM
KEITH HOTTLE
CLERK

No. 04-15-00398-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
8/31/2015 2:17:50 PM
KEITH HOTTLE
Clerk

# In the
# Fourth Court of Appeals, San Antonio, Texas

_____

**CAROLINE BUSWELL,**
*Appellant*

**v.**

**THE GWSPI COMPANY, LLC, AS SUCCESSOR IN INTEREST TO WILMINGTON TRUST, NA, TRUSTEE OF THE JEFFREY P. BLANCHARD 2013 FAMILY TRUST,**
*Appellee*

On Appeal from Cause No. 2015-CI-06197,
In the 224th District Court of Bexar County at San Antonio, Texas

## BRIEF OF APPELLEE

J. Steve Mostyn
jsmdocketefile@mostynlaw.com
Gregory F. Cox
gfcdocket@mostynlaw.com
Caroline L. Maida
clmaida@mostynlaw.com
MOSTYN LAW
3810 West Alabama St.
Houston, Texas 77027
713.714.0000 (Office)
713.714.1111 (Facsimile)

**Attorneys for Appellee**

August 31, 2015

## IDENTITY OF PARTIES AND COUNSEL

**Defendant/Appellant is Caroline Buswell.**

**Appellant's counsel are:**

> Andrew G. Jubinsky
> andy.jubinsky@figdav.com
> Lance V. Clack
> Lance.clack@figdav.com
> FIGARI + DAVENPORT, LLP
> 901 Main Street, Suite 3400
> Dallas, Texas 75202
> 214.939.2000 (Office)
> 214.939.2090 (Facsimile)

**Plaintiff/Appellee is The GWSPI Company, LLC, As Successor in Interest to Wilmington Trust, NA, Trustee of the Jeffrey P. Blanchard 2013 Family Trust.**

**Appellee's counsel are:**

> J. Steve Mostyn
> jsmdocketefile@mostynlaw.com
> Gregory F. Cox
> gfcdocket@mostynlaw.com
> Caroline L. Maida
> clmaida@mostynlaw.com
> MOSTYN LAW
> 3810 West Alabama St.
> Houston, Texas 77027
> 713.714.0000 (Office)
> 713.714.1111 (Facsimile)

# TABLE OF CONTENTS

COVER PAGE..........................................................................................i

IDENTITY OF PARTIES AND COUNSEL ...................................................... ii

TABLE OF CONTENTS.................................................................... iii

INDEX OF AUTHORITIES.........................................................................v

STATEMENT OF THE CASE.................................................................... viii

ISSUE PRESENTED ..............................................................................ix

STATEMENT OF FACTS ........................................................................1

STATEMENT ON ORAL ARGUMENT ....................................................3

SUMMARY OF THE ARGUMENT ........................................................3

ARGUMENT ..........................................................................................5

    A.    Special Appearance Burdens and Standards on Appeal .......................5

    B.    Appellee Satisfied the Jurisdictional Pleading Requirements ..............6

    C.    *Kelly v. General Interior Construction, Inc*. is Distinguishable…......10

    D.    The Trial Court Correctly Determined That It Could Exercise Specific Jurisdiction Over Buswell..................................................................17

        1. Buswell, a nonresident defendant, had minimum contacts with Texas.………………………...…………………………………..…18

        2. Buswell directed her minimum contacts toward Texas and could reasonably foresee being haled into a Texas court.……………………...……………………………...…21

        3. Buswell purposefully availed herself of the privileges and benefits of conducting business in the State of Texas.………………………...……………………………...…23

4. The trial court has specific jurisdiction over Buswell because the litigation arises from, relates to, and/or has substantial connection with Buswell's minimum contacts with the State of Texas.…………………...…………………………….…26

5. The trial court's exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice...………………...…………………………….…28

PRAYER ....................................................................................32
CERTIFICATE OF COMPLIANCE ........................................33
CERTIFICATE OF SERVICE .................................................33

# INDEX OF AUTHORITIES

**Cases**

*Am. Type Culture Collection, v. Coleman,*
83 S.W.3d 801 (Tex. 2002) ............................................................ 6, 10, 26

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
480 U.S. 102 (1987) ..................................................................................23

*BMC Software Belgium, N.V. Marchand,*
83 S.W.3d 789 (Tex. 2002) ................................................................. 10, 20

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ......................................................................... passim

*Carey III v. State of Texas,*
2010 Tex. App. LEXIS 5683 (Tex. App.—San Antonio July 21, 2010, pet.
denied) ..................................................................................... 6, 7, 8, 25

*Counter Intelligence, Inc. v. Calypso Waterjet Sys., Inc.,*
216 S.W.3d 512 (Tex. App.—Dallas 2007, no pet. h.) ................................27

*CSR, Ltd. v. Link,*
925 S.W.2d 591 (Tex. 1996) ......................................................................5

*First National Bank of Libby, Montana v. Rector,*
710 S.W.2d 100 (Tex. App.—Austin 1986, writ ref'd n.r.e.) .......................31

*Fjell Tech Group v. Unitech Int'l, Inc.,*
2015 Tex. App. LEXIS 966; 2015 WL 457805 (Tex. App.—Houston [14th
Dist.] February 3, 2015) ...........................................................................15

*Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,*
815 S.W.2d 223 (Tex. 1991) ............................................................. passim

*Kelly v. Gen. Interior Constr., Inc.,*
301 S.W.3d 653 (Tex. 2010) ................................................... 5, 10, 12, 16

*Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,*
966 S.W.2d 482 (Tex. 1998) ........................................................................22

*McGee v. International Life Ins. Co.,*
355 U.S. 220 (1957).....................................................................................29

*Michiana Easy Livin' Country, Inc. v. Holten*,
168 S.W.3d 777 (Tex. 2005) ............................................................. passim

*Pulmosan Safety Equip. Corp. v. Lamb*,
273 S.W.3d 829 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) .........6

*Retamco Operating, Inc. v. Republic Drilling Co.,*
278 S.W.3d 333 (Tex. 2009) ........................................................................14

*Royal Mortgage Corp. v. Montague*,
41 S.W.3d 721 (Tex. App.—Fort Worth 2001, no pet.) ...................... 248, 30

*Schlobohm v. Schapiro*,
784 S.W.2d 355 (Tex. 1990) ........................................................................31

*Siskind v. Villa Found. For Educ., Inc.,*
642 S.W.2d 434 (Tex. 1982) ........................................................................12

*Stauffacher v. Lone Star Mud, Inc.,*
954 S.W.3d 810 (Tex. App.—Texarkana 2001, no pet.) ...............................5

*Stull v. Laplant,*
411 S.W.3d 129 (Tex. App.—Dallas 2013, no pet.) ......................................5

*Tex. Dep't. of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) .........................................................................6

*Texas Commerce Bank v. Interpol '80 Ltd.,*
703 S.W.2d 765 (Tex. App.—Corpus Christi 1985 , no writ) .....................31

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)......................................................................................17

## Statutes

*McCarran-Ferguson Act*, 15 U.S.C. § 1012 ........................................................... 30

TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 ........................................................ 5

TEX. INS. CODE § 541.002 ...................................................................................... 22

TEX. INS. CODE § 541.003 ...................................................................................... 22

## Other Authorities

OXFORD AMERICAN DICTIONARY 728 (HEALD COLLEGES ED. 1980) ...................... 25

# STATEMENT OF THE CASE

*Nature of the case:*      Life Insurance Company of the Southwest ("LSW"), a Texas entity and defendant below, rescinded a ten million dollar ($10,000,000) policy on the life of Jeffrey P. Blanchard, a Texas resident. Appellee, and Plaintiff below, The GWSPI Company, LLC, *current* Trustee of the Jeffrey P. Blanchard 2013 Family Trust, filed suit against LSW and LSW's senior claim examiner, Caroline Buswell, Appellant and also Defendant below, in Bexar County state district court. Plaintiff asserted causes of action for breach of contract and breach of the duty of good faith and fair dealings against LSW and additional causes of action for fraud, conspiracy to commit fraud, and multiple violations of the Texas Insurance Code against LSW and Appellant Buswell. CT 1-18. Buswell, a Tennessee resident, actively participated in the investigation and decision to rescind the policy. Buswell filed a special appearance pursuant to TEX. R. CIV. P. 120a. CR 24-32. On June 8, 2015, the trial court heard the special appearance and denied it. CR 53. This interlocutory appeal followed. CR 59-60.

*Trial Court:*      Hon. David A. Canales of the 73rd District Court of Bexar County, sitting for the 224th District Court of Bexar County, Texas

*Trial court's action:*      On June 8, 2015, the trial court heard Appellant Buswell's special appearance and denied it. CR 53.

*Parties on appeal:*

     *Plaintiff/Appellee:*      The GWSPI Company, LLC, Trustee of the Jeffrey P. Blanchard 2013 Family Trust

     *Defendant/Appellant:*      Caroline Buswell

# ISSUE PRESENTED

Reply to issue: The trial court did not err in denying Appellant's special appearance and declaring that the trial court has specific jurisdiction over Appellant because: (1) Appellant's minimum contacts with Texas are purposeful and the causes of action relate to and are substantially connected to those contacts; and (2) Appellant, a nonresident defendant, failed to negate Appellee's asserted grounds for personal jurisdiction.

## STATEMENT OF FACTS

The basis of this suit is the rescission and failure to pay the proceeds of a ten million dollar ($10,000,000) life insurance policy (the "Policy"), which was applied for and issued in Texas by Defendant Life Insurance Company of the Southwest ("LSW"), a Texas company with its principal place of business in Addison, Texas. CR 2-5; CR 49-51. This Texas Policy insured the life of Bexar County, Texas resident, Jeffrey P. Blanchard ("Mr. Blanchard") who died in Texas on June 19, 2014. CR 4.

The Policy's owner and the intended recipient of the insurance proceeds is the Jeffrey P. Blanchard 2013 Family Trust ("the Family Trust"). CR 4-5. The current trustee of the Family Trust, and appellee herein, is The GWSPI Company, LLC ("Appellee" and/or "Trustee"). CR 24.

Following Mr. Blanchard's death, Appellee submitted a claim to LSW for the insurance proceeds. CR 4. LSW assigned its employee and senior claims examiner, Appellant Caroline Buswell ("Appellant" or "Buswell") to "supervise the contestability review on the Policy." CR 25; RR 20:8-9, 12:21-24. Buswell, a resident of Tennessee, reviewed the medical records from Mr. Blanchard's Texas physicians and hospitals. RR 1-17. She also reviewed Mr. Blanchard's application for the Policy from LSW's file in Texas. CR 49-51. Based upon this review, a decision was made to rescind the ten million dollar ($10,000,000) Texas Policy

1

because of alleged misrepresentations in the Policy's application. CR 4-5. Buswell, in her capacity as senior claims examiner for LSW, authored and signed the August 1, 2014 letter to The Blanchard Estate and sent this letter to the estate in San Antonio, Texas, RR 12:6-7, notifying it of the policy rescission. CR 46-48. By a second letter of the same date, Buswell notified the Family Trust of the rescission to its then-trustee, Cook, TPA, in the State of New York. CR 24-25. Enclosed with the second letter was a check refunding policy premiums. *Id*.

On April 15, 2015, Appellee filed suit in state district court in Bexar County, Texas against LSW and Buswell for the wrongful rescission of the Policy and the failure to pay the Policy's proceeds. CR 1-18. Specifically, as against LSW, the Trustee alleged breach of contract, a declaratory judgment action, and breach of the duty of good faith and fair dealing. As against LSW and Buswell *both*, the Trustee alleged causes of action for fraud, conspiracy to commit fraud, and multiple violations of the Texas Insurance Code. *Id.*

On May 22, 2015, Buswell filed a special appearance seeking a dismissal from the suit for lack of jurisdiction in Texas. CR 24-32. Buswell's special appearance was heard on June 8, 2015 by Judge David Canales, sitting for the 224th District Court, Bexar County, Texas. RR 1-30. At the close of the hearing, the trial court overruled Buswell's special appearance and confirmed that Buswell is subject to jurisdiction in Texas. RR 27:20-21; CR 53. No findings of fact or conclusions of law

2

were filed by the trial court. This interlocutory appeal challenges the trial court's order overruling Buswell's special appearance. CR 53; 59-60. Appellee asserts that the trial court's order should be affirmed.

## STATEMENT ON ORAL ARGUMENT

Appellee, The GWSPI Company, LLC, opposes Appellant's request for oral argument. The noncomplex issues presented by this interlocutory appeal are capable of being fully and adequately understood by the Court and briefing of the parties without the necessity of oral argument. Moreover, the record is clear that the trial court did not err in denying Buswell's special appearance. As such, oral argument would not aid this Court in resolving the issue presented by Appellant.

## SUMMARY OF THE ARGUMENT

The trial court's denial of Appellant Caroline Buswell's special appearance should be affirmed. Appellee, GWSPI Company LLC met its initial burden in its original petition and in its response to Buswell's special appearance, to sufficiently allege jurisdictional facts bringing Buswell within reach of the Texas long-arm statute which governs Texas courts exercise of jurisdiction over nonresident defendants. The burden then switched to Burwell, as the nonresident defendant to negate all potential bases alleged for the exercise of personal jurisdiction which Buswell here failed to do. Accordingly, the trial court was correct in determining

3

that it has specific jurisdiction over this defendant Tennessee resident and the order denying Buswell's special appearance should be affirmed.

The trial court's determination that it has specific jurisdiction over Buswell was correct **because**: (1) Buswell has sufficient minimum contacts with the State of Texas for minimum contacts purposes consisting of her review of Texas documents--the medical records from Mr. Blanchard's Texas physicians and hospitals and Mr. Blanchard's application for the life insurance policy in LSW's Texas files—upon which the rescission of the ten million dollar ($10,000,000) Policy was based and which rescission resulted in her August 1, 2014 letter notifying the Blanchard Estate in San Antonio, Texas of the Policy's rescission; (2) Buswell directed those minimum contacts toward the State of Texas and could reasonably foresee being haled into a Texas court based on a controversy arising from the rescission of a ten million dollar ($10,000,000) Policy and the failure to pay the proceeds of that Policy; (3) Buswell "purposely availed" herself of the privileges and benefits offered by Texas while conducting her business in Texas--the investigation of the life insurance policy claim; (4) Buswell's minimum contacts, noted above, are related to and are substantially connected with the litigation and are, in fact, the very foundation and core of it and Appellee's causes of action alleged against Buswell for various violations of the Texas Insurance Code, fraud and conspiracy to commit fraud; and (5) based on all of the above facts, the exercise of specific jurisdiction over Buswell

4

by a Texas trial court does not offend traditional notions of fair play and substantial justice. The trial court's order denying Buswell's special appearance should be affirmed.

## ARGUMENT

### A.     Special Appearance Burdens and Standards on Appeal:

In an action involving a special appearance, the parties are subject to shifting burdens. The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute.[1] A plaintiff's original petition as well as a response to the defendant's special appearance can both be considered in determining whether the plaintiff satisfied its original pleading burden.[2] If the plaintiff meets this modest pleading burden, then the burden shifts to the nonresident defendant to prove that it is *not* subject to jurisdiction in Texas.[3] "A nonresident defendant **must** negate all bases of personal jurisdiction to prevail in a special appearance."[4]

---

[1] *See Kelly v. Gen. Interior Constr., Inc*., 301 S.W.3d 653, 658 (Tex. 2010); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. This statute, with its broad language, authorizes Texas courts to exercise personal jurisdiction over anyone "doing business" in Texas and permits the statute to reach as far as federal constitutional requirements of due process permit. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C*., 815 S.W.2d 223, 226 (Tex. 1991).
[2] *See Stull v. Laplant,* 411 S.W.3d 129, 134 (Tex. App.—Dallas 2013, no pet.).
[3] *CSR, Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996).
[4] *Stauffacher v. Lone Star Mud, Inc.,* 54 S.W.3d 810, 816 (Tex. App.—Texarkana 2001, no pet.).

5

Whether a court has personal jurisdiction over a nonresident defendant is a pure question of law that this Court reviews *de novo*.[5] In considering the denial of a special appearance, the Court determines only the issues of jurisdiction, not liability.[6] Additionally, when determining a jurisdictional plea and whether sufficient facts were plead to give the trial court jurisdiction, a plaintiff's pleadings are liberally construed and the allegations accepted as true and in the light most favorable to the plaintiff.[7]

## B.    Appellee Satisfied the Jurisdictional Pleading Requirements:

Appellee met its initial pleading burden and sufficiently pleaded the grounds on which the trial court could—and ultimately did—exercise specific jurisdiction over Appellant under the Texas long-arm statute.[8] In describing the extent of a plaintiff's initial pleading burden in a special appearance contest, this very Court in *Carey III. v. the State of Texas*[9] held:

> To meet this burden, the plaintiff does not need to detail all the theories or bases of personal jurisdiction upon which he relies; rather, the plaintiff needs only to plead allegations sufficient to bring the nonresident defendant within the province of the long-arm statute [cites omitted].[10]

---

[5] *See Am. Type Culture Collection, v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002).

[6] *Id.* at 805.

[7] *See Tex. Dep't. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004); *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

[8] *Coleman,* 83 S.W.3d at 807.

[9] *Carey III v. State of Texas*, 2010 Tex. App. LEXIS 5683 (Tex. App.—San Antonio July 21, 2010, pet. denied).

[10] *Id*. at *5.

*Carey III* illustrates a plaintiff's pleading requirement in a special appearance contest. The Careys owned two Nevada limited liability companies, which had their principal offices in Florida and operated in Texas.[11] The companies sold travel-related software licenses to Texas consumers.[12] The State brought suit against the Careys individually and named the two companies for fraudulently obtaining millions of dollars from Texas consumers through misrepresentations in the advertising and sale of the travel-related software licenses.[13] This Court found the following jurisdictional allegations sufficient to invoke the Texas long-arm statute:

> In its original petition, the State specifically named each defendant, including each of the Careys, and then began referring to all the defendants collectively as 'Defendants.' The State alleged the defendants, without making the appropriate disclosures, solicited Texas consumers to attend sales presentations and used false, deceptive, and misleading acts to persuade consumers to enter into contracts for travel-related software licenses. In a separate section of the petition entitled 'Liability of James Edward Carey III and Gwendolyn Faye Carey, Individually,' the State alleged the Careys were directly and indirectly engaged in the 'deceptive acts and practices by making false or misleading material misrepresentations to consumers' after knowing such representations were false and misleading. The State further alleged the Careys made these false representations with the intent to induce Texas consumers to rely on the representations and enter into purchased agreements for the travel-related software licenses…[14]

This Court held:

---

[11] *Id.* at *4.
[12] *Id.*
[13] *Id.*
[14] *Id*. at *12.

7

**By describing the allegations against the defendants and asserting the Careys were individually liable for the fraudulent practices and misrepresentations, we conclude the State alleged sufficient jurisdictional facts to bring the Careys within the Texas long-arm statute.**[15]

Like the allegations found to be sufficient in *Carey III*, here, the allegations in *Plaintiff's Original Petition*, CR 1-18, when considered along with *Plaintiff's Response to Defendant Caroline Buswell's Special Appearance,* CR 33-51, satisfy Trustee's modest, initial burden to plead sufficient allegations to bring Buswell within the reach of the Texas long-arm statute. *Plaintiff's Original Petition,* in relevant part, states:

> 7.     The Court has jurisdiction over Defendant Buswell because this and defendant engages in the business of insurance in the State of Texas, and Plaintiff's causes of action arise out of this defendant's business activities in the State of Texas.
>
> 8.     This Court has personal jurisdiction over each Defendant because they do business in Texas and have sufficient contacts with the State of Texas, both generally and with regard to this specific action, so that exercise of personal jurisdiction over them is proper and does not offend traditional notions of fair play and substantial justice. CR 3.
>
> **...**
>
> 17.    Defendant LSW assigned Defendant Buswell to investigate Plaintiff's claim. Buswell was improperly trained and failed to perform a thorough investigation of the claim. By letter dated August 1, 2014, LSW and Buswell wrongfully rescinded the Policy misrepresenting that material misrepresentations were made in the application for the Policy and underwriting process. Thereafter, also on August 1, 2104, [sic] LSW and Buswell denied Plaintiff's claim based on the wrongful rescission. CR 4.

---

[15] *Id.* (emphasis added).

*Plaintiff's Response to Defendant Caroline Buswell's Special Appearance* summarizes the separate section in *Plaintiff's Original Petition* entitled: "Causes of Action Against Buswell: Noncompliance with Texas Insurance Code: Unfair Settlement Practices," CR 8-10, wherein Appellee sets forth specific allegations of Buswell's wrongful conduct in the business of insurance that relate to the litigation and give rise to Buswell's liability under the Texas Insurance Code:[16]

> 5.    On May 22, 2015, Defendant Buswell filed her Special Appearance. Buswell seeks to be dismissed from this case based upon lack of jurisdiction. Buswell's arguments are insufficient to dismiss the claims against her in this suit because the acts and omissions she committed were in violation of Texas law and took place in the State of Texas. This Court has personal jurisdiction over Buswell despite the fact that she resides in Tennessee. The Court has jurisdiction over Buswell because at the time of the incident made the basis of this lawsuit, **she was engaged in the business of investigating insurance claims in the State of Texas, and the causes of action made the basis of this lawsuit arise out of Buswell's business activities in the State of Texas. Specifically, Buswell engaged in the investigation of a life insurance claim in Texas. Under Texas law, insurance investigators are *individually* liable for violations of the Texas Insurance Code, regardless of whether they were acting on behalf of themselves or in their capacity as an employee of an insurance company engaged in the business of investigating insurance claims in Texas.** CR 35 (internal citations omitted) (emphasis added).

In sum, Appellee's petition, which must be construed liberally, and the allegations therein, which this Court must accept as true, when taken together with

---

[16] *See also* CR 5-10 ¶¶ 20-4 (Appellee quotes summarization of Plaintiff's pleading contained in *Plaintiff's Response to Defendant Caroline Buswell's Special Experience* in lieu of inserting extended excerpts from the pleading in full).

*Plaintiff's Response to Defendant Caroline Buswell's Special Appearance*, allege sufficient jurisdictional facts to bring Buswell within the reach of the Texas long-arm statute. Appellee has discharged its initial pleading burden.[17] The burden now shifts to Appellant Buswell, the nonresident defendant, to negate all potential bases for personal jurisdiction.[18] Appellant Burwell failed to do so.

**C.    *Kelly v. General Interior Construction, Inc*. is Distinguishable:**

In attempting to satisfy her burden to show that she is not subject to the jurisdiction of this Texas court, Appellant Buswell relies heavily on *Kelly v. General Interior Constr., Inc.*,[19] RR 7:24-25; 8-9:1-13.[20] Specifically, Appellant's brief touts that *Kelly* is the "Case in Point," and nearly one–third of Appellant's brief is spent discussing the *Kelly* opinion.[21]

*Kelly,* however, is distinguishable and provides no support for a reversal of the trial court's order overruling Buswell's special appearance. A brief look at the facts in *Kelly* is necessary in order to distill its distinctions to this case.

*Kelly* is a construction contract case concerning the renovation of a Houston hotel.[22] The two individual, nonresident defendants are owners and officers ("Officers") of Diva Constructing, Inc. ("Diva"), an Arizona-based construction

---

[17] *See American Type Culture Collection*, 83 S.W.3d at 807.
[18] *BMC Software Belgium, N.V. Marchand*, 83 S.W.3d 789, 798-99 (Tex. 2002).
[19] *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653 (Tex. 2010).
[20] *See also* Appellant's Brief at 7-10.
[21] *Id.*
[22] *Kelly*, 301 S.W. 3d at 656.

10

company. Diva contracted with another non-Texas entity for the hotel's renovation[23] and, also, contracted with General Interior Construction, Inc. ("GIC"), a Texas corporation, for performance of part of the renovation.[24] Conflict arose and GIC sued the two individual officers ("Officers") and Diva for breach of contract, fraud and violations of the Texas Trust Fund Act.[25] The nonresident defendant Officers filed a special appearance which was denied by the trial court.[26] The court of appeals affirmed in part finding that the Officers were subject to jurisdiction in Texas for plaintiff's fraud and Texas Trust Fund claims but reversed as to the breach of contract claim.[27]

The Texas Supreme Court reversed and dismissed all the claims against the Officers finding that GIC had failed to meet its initial special appearance burden to plead **any** jurisdictional allegations to bring the defendant Officers within the reach of the Texas long-arm statute.[28]

> **As noted, GIC's live pleading contains no allegations that the Officers' wrongdoing occurred in Texas.** Regarding the fraud claim, GIC did allege several fraudulent acts (e.g., providing false affidavits to Meristar and misrepresenting to GIC that it would be paid in full), but it did not allege that any fraudulent acts occurred in Texas. Regarding the trust-fund claims, GIC did not allege that the Officers used or retained the trust funds in Texas, nor that they submitted false affidavits to Meristar in Texas. Thus, although GIC has alleged two

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 655.
[28] *Id.* at 659-60.

11

claims of wrongdoing, it has not alleged that any acts giving rise to these two claims occurred in Texas.[29]

Thus, the crux of the holding in *Kelly* is GIC's complete failure to plead jurisdictional facts tying the Officers' torts to Texas.[30] Because GIC failed to meet its initial burden to plead sufficient jurisdictional facts, the Officers were able to satisfy their burden to negate all bases for jurisdiction by merely proving that they did not reside in Texas.[31]

*Kelly*, therefore, does not qualify as the "Case in Point," here, for many reasons. First, unlike the petition in *Kelly,* which failed to plead **any** jurisdictional facts, *Plaintiff's Original Petition*, CR 1-18, and special appearance response, CR 33-51, as discussed above, demonstrate that Appellee has plead sufficient jurisdictional facts to bring the nonresident defendant, Buswell, within the confines of the Texas long-arm statute. In short, there is no pleading failure in this case. Given that the primary holding in *Kelly* is based on GIC's pleading failure, *Kelly* is certainly not the "Case in Point" here.

Second, Appellant's brief omits, entirely, any discussion of the primary holding in *Kelly,* instead fixating on a secondary holding that a nonresident defendant's mere commission of an act in violation of Texas law will not grant a

---

[29] *Id.* at 660 (emphasis added).
[30] *Id.* at 659.
[31] *Id. citing Siskind v. Villa Found. For Educ., Inc.,* 642 S.W.2d 434,438 (Tex. 1982).

Texas court jurisdiction over the nonresident actor.[32] Applying this rule and what Appellant perceives to be the rule in *Michiana Easy Livin' Country, Inc. v. Holten*,[33] Appellant argues that Appellee fails to identify any acts Buswell directed towards Texas, or committed in Texas that give rise to Appellee's claims against Buswell.[34] Appellant asserts that her authoring, signing, and sending of the August 1, 2014 rescission letter to the Blanchard Estate in San Antonio, Texas does not constitute a sufficient minimum contact. Specifically, Buswell contends that she did not have sufficient, minimum contacts with Texas because: (1) "Buswell did not send the letter ***from Texas***"; (2) the Blanchard Estate is not a party to the litigation; and (3) the rescission letter, according to Appellant, "is a single communication with a Texas resident," which even if tortious, is insufficient to give a Texas court jurisdiction over Buswell.[35] Citing *Kelly* yet again, Appellant draws the erroneous conclusion that "[a]ppellee has not introduced evidence of activity in Texas that gives rise to its claims, and therefore it has failed to demonstrate jurisdiction over Buswell."[36]

Appellant's interpretation of the law and representation of the facts and allegations in this litigation are specious at best. Appellant's contention that in order to establish jurisdiction, a nonresidents' contacts must have "**taken place in Texas**"

---

[32] *See* Appellant Brief at 7-10.
[33] *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005).
[34] *See* Appellant's Brief at 8-9.
[35] *See* Appellant's Brief at 9 (emphasis added).
[36] *See* Appellant's Brief at 9-10.

or "**be in Texas**" or "**come from Texas**" is simply incorrect. The Texas Supreme Court, in *Michiana,* did not hold that specific jurisdiction turns only on Texas-based contacts. Rather, *Michiana* makes clear that the exercise of specific jurisdiction by a Texas court does not require the physical intrusion into Texas of a nonresident defendant's minimum contacts.

In *Retamco Operating, Inc. v. Republic Drilling Co.*, the Texas Supreme Court affirmed personal jurisdiction over the nonresident defendant, Republic Drilling Company.[37] Retamco, a Texas company sued Republic, a California domiciliary, for fraudulent transfer of oil and gas leases in violation of the Fraudulent Transfer Act.[38] Republic filed a special appearance arguing that it did not have minimum contacts in Texas because the transfer occurred outside of Texas.[39] **The Supreme Court held that "[j]urisdiction …may not be avoided merely because the defendant did not physically enter the forum state**."[40]

Appellant makes the conclusory argument multiple times at the special appearance hearing and in her brief, that the August 1, 2014 rescission letter to the Blanchard Estate in Texas is not a sufficient minimum contact because the estate is not a party to the litigation. RR 7:3-5, 10: 7-9; 25: 2-12.[41] Appellant, however, does

---

[37] *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333 (Tex. 2009).
[38] *Id.* at 336.
[39] *Id.* at 336-37.
[40] *Id.* at 339 (quoting *Burger King*, 471 U.S. at 476) (emphasis added).
[41] *See* Appellant's Brief at 4, 8, and 9.

14

not cite a single legal authority in support of this wholly conclusory argument. Appellee contends there is no authority to support Appellant's conclusion because it is not the law in Texas. In fact, the exact opposite appears in cases that Appellee has reviewed. For example, in *Fjell Tech. Group v. Unitech Int'l, Inc.*,[42] a recent case out of the Fourteenth Court of Appeals the court considered whether an individual employee (Van Uden) of a Norwegian company had sufficient contacts in Texas where she sent marketing emails to individuals in Texas (non-parties) and also by communicating with a Texas company's Texas-based employees. In particular, with regard to the trade secret claim, the court held:

> Fjell's and van Uden's liability, if any, arises from and relates to their contacts with Texas because (1) the alleged email transmission of Unitech's alleged trade secrets to individuals in Texas and (2) the use of Unitech's confidential customer lists in sending the emails, all of which allegedly caused Unitech to suffer economic harm, are at the core of Unitech's trade-secret theft claims.[43]

Thus, nonresident defendants Fjell's and van Uden's email transmissions to individual Texas customers **who were non-parties in the litigation** were found by the court to constitute sufficient minimum contacts because they were purposefully,

---

[42] *Fjell Tech Group v. Unitech Int'l, Inc.*, 2015 Tex. App. LEXIS 966; 2015 WL 457805 (Tex. App.—Houston [14th Dist.] February 3, 2015).
[43] *Id.* at 2015 Tex. App. LEXIS 966, * 21.

not random and fortuitous, and they substantially related to the operative facts of Unitech's Texas Theft Liability Act.[44]

Appellee rejects Appellant's unsupported and conclusory proposition of law that the rescission letter to the Blanchard Estate in Texas is not a sufficient minimum contact for Buswell. The letter, as explained herein was purposefully, was directed toward Texas and was substantially connected to the litigation because it contained actionable misrepresentations regarding the rescission of the Policy in violation of Chapter 541 of the Texas Insurance Code. The fact that the letter was mailed to a non-party in Texas, the Blanchard Estate, is entirely irrelevant and has no bearing on whether this letter from Buswell constitutes a legitimate Texas contact—it is. CR 46-48.

Given the well-established precedent and the blatant dissimilarities between the present case and the primary authorities relied on by Appellant, *Kelly* and *Michiana,* Appellee urges that Appellant failed to meet his burden to negate potential bases for the trial court's personal jurisdiction and has not presented a viable ground for a reversal of the trial court's order. The denial of Buswell's special appearance should be affirmed.

---

[44] *Id.* at 2014 Tex. App. LEXIS 966, *18.

**D.** **The Trial Court Correctly Determined That It Could Exercise Specific Jurisdiction Over Buswell:**

To establish specific jurisdiction over a nonresident defendant, two requirements must be met. First, the nonresident defendant must have minimum contact with the forum state and those minimum contacts with the forum state must be: (1) purposeful, rather than random, fortuitous, or attenuated; and (2) purposefully directed toward the forum state so the nonresident defendant could reasonably foresee being haled into court there. Second, the causes of action asserted must arise from, relate to, and/or be substantially connected to the nonresident defendant's minimum contacts.[45]

As detailed below, Appellant Buswell's forum contacts plainly satisfy the foregoing requirements. Further, Appellee's causes of action against Buswell arise from, relate to, and/or are substantially connected to Buswell's minimum contacts to such an extent that the trial court's exercise of specific jurisdiction over Buswell is proper and does not violate the due process clause of the United States Constitution. Accordingly, the trial court's order denying Buswell's special appearance should be affirmed.

---

[45] *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### 1. *Buswell, a nonresident defendant, had minimum contacts with Texas:*

A Texas trial court may properly exercise personal jurisdiction over a nonresident defendant under the Due Process Clause of the U.S. Constitution and the Texas long-arm statute when: (1) the defendant has established **minimum contacts** with Texas; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.[46]

Buswell's **minimum contacts** with Texas support the trial court's exercise of specific jurisdiction. To accomplish her assignment to investigate the ten million dollar ($10,000,000) life insurance claim, Buswell was tasked with reviewing, and in fact reviewed, medical records from Mr. Blanchard's health care providers and treating physicians in the State of Texas. Additionally, Buswell was tasked with reviewing Mr. Blanchard's application for the life insurance policy, which was submitted to LSW and maintained in LSW's files in its Texas office. CR 49-51. Following and based on Buswell's review of these Texas documents, the decision was made to rescind the Policy. CR 46-48. Notification of the rescission was provided by Buswell, who authored, signed and sent two rescission letters dated August 1, 2014—one to Blanchard's Estate in San Antonio, Texas and the second to then-Trustee of the Blanchard Family Trust in New York. CR 46-51; RR 5: 10-13.

---

[46] *Id.*, *Burger King,* 471 U.S. at 475-76.

This rescission letter makes clear that the Texas medical records and application for insurance submitted and maintained in Texas were the key components of the decision to rescind the Policy. CR 46-48. These contacts by Buswell with Texas constitute the required minimum contacts necessary to confer specific jurisdiction over Buswell. CR 46-51. Thus, as to whether Buswell has sufficient minimum contacts with the State of Texas, the answer must be "yes."

Appellant only acknowledges one of these contacts—the August 1, 2014 letter—and contends that letter to Blanchard's Estate in San Antonio, Texas is insufficient to establish jurisdiction over Buswell because it is only a "single communication."[47] Appellant urges *Michiana* stands for the proposition that a single communication, or minimum contact of one letter, is not sufficient to support specific jurisdiction over Buswell.[48] At the trial court hearing, counsel for Appellant, referencing Buswell's August, 2014, rescission letter, which was sent to the Estate in San Antonio, Texas was "[t]he only piece of evidence in this record, the only specific fact alleged, is one letter that Ms. Buswell sent to the estate," and urged that *Michiana* states that "[t]hat's not enough." RR 10: 21-24.

As previously discussed, Appellant counsel's interpretation of the holding in *Michiana* is misguided. In *Michiana*, the Court held that the exercise of personal

---

[47] *See* Appellant's Brief at 9.
[48] *Id.*

jurisdiction over Michiana, an Indiana resident, was improper because Michiana's **sole contact** with Texas was not the result of any actions directed toward Texas.[49] The sole contact in *Michiana* was in fact a telephone call from Holten, a resident of Texas, who called Michiana in Indiana to arrange for the purchase of an RV.[50] Appellant's attempt to analogize this single contact in *Michiana*—a contact expressly initiated by the Texas-plaintiff, not the nonresident defendant—with the contacts initiated by Buswell and explicitly directed toward Texas is lacking and without merit.

Furthermore, Appellant is mistaken in concluding that Buswell has only <u>one</u> minimum contact with Texas—Buswell has <u>two</u> minimum contacts—the Texas documents comprised of the medical records and Policy application, CR 49-51, and the August 1, 2014 rescission letter to Blanchard's Estate in San Antonio, Texas, CR 46-48. However, even if Appellee only had the one contact—either the Texas documents, or the Texas rescission letter—either would be sufficient for purposes of specific jurisdiction because Buswell's alleged liability and the litigation are related to and substantially connected to precisely these contacts.[51] Thus, a single

---

[49] *See Michiana Easy Livin' Country v. Holten*, 168 S.W.3d at 794.
[50] *Id.*
[51] *See BMC*, 83 S.W.3d at 796.

20

act or contact is sufficient for purposes of minimum contacts to support the exercise of specific jurisdiction.[52]

### 2. *Buswell directed her minimum contacts toward Texas and could reasonably foresee being haled into a Texas court.*

Next, unlike the parties in *Michiana*, here, Buswell purposefully directed her minimum contacts toward Texas. As the assigned LSW senior claims examiner, Buswell was tasked with investigating the Texas life insurance claim submitted by the Texas Trustee of the Blanchard Family Trust. CR 4; RR 6: 13-14. Thus, it is hardly surprising, and was reasonably foreseeable, that this assignment would result in Buswell having to conduct business with or direct her business activities toward the State of Texas. Critical to the investigation of the Texas claim was Buswell's review of Texas medical records and an application maintained in LSW's Texas files, as expressly acknowledged in Buswell's August, 2014, rescission letter to both the Blanchard Estate in San Antonio, Texas and the Trustee. Thus, as to whether Buswell purposefully directed her business activities toward the State of Texas, the answer, again, must be "yes."

In addition, it is in no way surprising, or unforeseeable that Buswell could be haled into a Texas court for conduct relating to her investigation of Appellee's insurance claim and the ultimate decision to rescind a ten million dollar

---

[52] *See Burger King*, 471 U.S. at 476 n.18.

21

($10,000,000) Texas life insurance policy. Likewise, it was reasonably foreseeable that Buswell's liability in a Texas court would be based on the laws that regulate the business of insurance in the State of Texas, namely the Texas Insurance Code.

Chapter 541, Subsection A of the Texas Insurance Code ("TIC") prohibits any "person" from engaging in deceptive practices in the business of insurance.[53] The term "person" in the TIC is defined as "any **individual,** corporation, association, partnership…and any other legal entity **engaged in the business of insurance**, including agents, brokers, adjusters and life insurance counselors."[54] In *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*,[55] the Texas Supreme Court specifically held that the term "person" for the purpose of placing liability, includes individuals and company employees who are engaged in the business of insurance.[56] Hence, by definition and pursuant to case law, Section 541.002 includes claim examiners and investigators such as Buswell who engage in the business of insurance in Texas. Fittingly, Section 541.003 provides for a private right of action against any person who engages in unfair or deceptive acts in Texas in the business of insurance.[57]

Buswell's August 1, 2014 letter also stated that if the estate felt it was treated unfairly, it should contact the Texas Department of Insurance, and provided the

---

[53] TEX. INS. CODE § 541.003.
[54] TEX. INS. CODE § 541.002(emphasis added).
[55] *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex. 1998).
[56] *Id.* at 486-87.
[57] TEX. INS. CODE § 541.003.

estate with the Texas address. Had the estate contacted the Texas Department of Insurance, and the department started an investigation, the department would surely have the duty to defend or discipline the actions of Buswell. By including this in the letter, Buswell and LSW could have foreseen being haled into a Texas court to defend their investigation.

Accordingly, Buswell is subject to individual liability under the Texas Insurance Code for her wrongful acts and omissions in the investigation and handling of Appellee's claim for proceeds under a Texas life insurance policy.

### 3. *Buswell purposely availed herself of the privileges and benefits of conducting business in the State of Texas.*

"Purposeful availment" has been said to be the touchstone of the jurisdictional due process analysis.[58] There are three parts to a purposeful availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.[59]

Buswell's Texas contacts have met all three parts to a purposeful availment inquiry. First, Buswell's Texas contacts were purposefully directed toward Texas

---

[58] *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987); *Burger King*, 471 U.S. at 474.
[59] *Id.*

23

and Buswell's contacts with Texas are relevant because the **State of Texas was center stage where** the insured, Jeff Blanchard had lived, **where** the application for the Policy had been completed, **where** LSW is headquartered and had issued the Policy and received the premiums, and **where** Blanchard's physicians, hospitals and medical records were located. With regard to the relevancy of the nonresident Defendant Buswell's activities, Texas is **where** Blanchard's medical records and Mr. Blanchard Policy's application were located. Based upon review of these Texas documents, Buswell participated in the decision to rescind the Policy. Texas is also **where** Buswell's August 1, 2014 letter that Buswell authored, signed, and sent to the Blanchard Estate in Texas, to notify those holding Blanchard's assets of the rescission of the ten million dollar ($10,000,000) life insurance Policy.

Therefore, with regard to the first purposeful availment inquiry, Buswell did purposefully direct her contacts toward Texas and these contacts--her review of the Texas medical records and application for the Policy—were relevant as the review caused Buswell to recommend rescission of the Policy and to send the August 1, 2014 rescission letter to the Blanchard Estate in Texas.

Buswell's contacts also satisfy the second part of the purposeful availment inquiry—that the contacts relied on must be meaningful and **purposeful** rather than **random, fortuitous,** or **attenuated**.[60] The definition of "purposeful" is "having or

---

[60] *See Carey III,* 2010 Tex. App. LEXIS 5683, at *4.

showing a particular purpose with determination"[61] and "purpose" within that phrase is defined as "an intended result, something for which effort is being made."[62] By these definitions, Blanchard's review of the Texas medical records and Policy application and active investigation of Appellee's claim for life insurance policy proceeds are contacts that are both meaningful and purposeful because they had a particular purpose and an intended result—to determine whether the claim and Policy should be honored or rescinded. Likewise, the resulting rescission letter sent to Blanchard's Estate in Texas was a purposeful contact because its intended result was to inform the Estate of the decision not to pay the claim or honor the Policy and to instead rescind the Policy.

By no means can Buswell's contacts be classified as: (1) "random," defined as "without a particular aim or purpose or principle,"[63]or (2) fortuitous," defined as "happening by chance,"[64] or (3) "attenuated," meaning "to make thin or weak"[65] Buswsell's contacts which were purposefully directed toward Texas formed a substantial connection with the ultimate litigation and was the basis for it.

Finally, Buswell's Texas contacts meet the third part of the purposeful availment inquiry—Buswell, the nonresident defendant, sought some benefit,

---

[61] OXFORD AMERICAN DICTIONARY 728 (HEALD COLLEGES ED. 1980).
[62] *Id.*
[63] *Id.* at 743.
[64] *Id.* at 344.
[65] *Id.* at 51.

advantage, or profit by availing herself of the jurisdiction.[66] Namely, Buswell's continued employment with LSW hinged on her fulfillment of the assigned task of investigating Appellee's insurance claim. Moreover, the ultimate decision to rescind the ten million dollar ($10,000,000) life insurance Policy—a decision wholly based on Buswell's investigation and review of the Texas medical records and the Policy application as acknowledged in the August, 2014 rescission letter—also resulted in a substantial benefit and advantage to Buswell's employer, LSW, which was thereby relieved from having to pay the ten million dollars ($10,000,000) in life insurance policy proceeds owed under the Policy. At a minimum, Buswell's conduct could not have discouraged LSW's continued employment of Buswell as a senior claim examiner.

Buswell's Texas contacts satisfy all three parts of the purposeful availment inquiry.  As such, Buswell purposely availed herself of the privileges and benefits of conducting business in the State of Texas and the trial court proper exercised specific jurisdiction over Buswell.

### 4. The trial court has specific jurisdiction over Buswell because the litigation arises from, relates to, and/or has substantial connection with Buswell's minimum contacts with the State of Texas.

One of the requirements of specific jurisdiction is that the litigation "arise from or relate to" the minimum contacts with the forum state. This requirement lies

---

[66] *See Coleman*, 83 S.W.3d at 806; *Burger King*, 471 U.S. at 475.

at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state.[67] Simply stated, for Buswell's contacts to support the exercise of specific jurisdiction **there must be a substantial connection between those contacts and the operative facts of the litigation**,[68] and, here, such a connection does exist.

This litigation undeniably arises out of at least one operative fact— the Policy rescission. The decision to rescind was primarily, if not wholly, based on Buswell's contacts—Buswell's review of the Texas medical records of Jeff Blanchard and her review of the Policy application submitted to and maintained in LSW's Texas offices. Furthermore, the announcement and notice of rescission was expressly authored by, signed, and sent by Buswell.  CR 46-51.

In sum, Buswell's minimum contacts became the very core and foundation of the litigation brought by Appellee, the Texas Trustee for the Blanchard 2013 Family Trust. Without an investigation of the Texas medical records and the Policy application by Buswell and the resultant announcement and notice of rescission by Buswell, in part via a letter to the Blanchard Estate in San Antonio, Texas, there would be no litigation. As to whether the causes of action, here, arise from, relate to,

---

[67] *See Counter Intelligence, Inc. v. Calypso Waterjet Sys., Inc.,* 216 S.W.3d 512, 517 (Tex. App.—Dallas 2007, no pet. h.).
[68] *Id.* at 517.

and/or are substantially connected with Buswell's minimum contacts with Texas, the answer is a resounding "yes."

**5. *The trial court's exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice***

"Fair play and substantial justice" is an element of due process. Under this element the nonresident defendant bears the burden of raising "a compelling case that the presence of some consideration would render jurisdiction unreasonable."[69] "[O]nly in **rare cases** will the exercise of jurisdiction not comport with fair play and substantial justice."[70]

Several factors are relevant in determining whether the exercise of jurisdiction over a nonresident defendant complies with traditional notions of fair play and substantial justice. These factors include: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in resolving the controversy efficiently, and (5) the shared interests of the various states in furthering fundamental substantial social policies.[71]

Here, Appellant has not met her burden of raising "a compelling case that the presence of some consideration would render jurisdiction unreasonable."[72]

---

[69] *Guardian Royal Exch.*, 815 S.W.2d at 231(quoting *Rudzewicz,* 471 U.S. at 477).

[70] *Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 731 (Tex. App.—Fort Worth 2001, no pet.) (emphasis added); *see also Guardian Royal Exch.*, 815 S.W.2d at 231.

[71] *See Rudzewicz*, 471 U.S. at 477; *Guardian Royal Exch.*, 815 S.W.2d at 231.

[72] *Id.*

28

Appellant only argues factors (1) the burden on the defendant; and (3) the plaintiff's interest in obtaining convenient and effective relief.[73] Neither of these arguments gives this case the distinction of being called a "rare case" where the exercise of special jurisdiction does not comport with fair play and substantial justice.

***Buswell will not be substantially burdened by having to defend a lawsuit in Texas.*** Buswell complains that because she lives out-of-state, that the burden of litigating in Texas is "understandably substantial."[74] This fact of non-residency in Texas is not compelling. Non-residency in Texas does not cause an excessive burden today as "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."[75] This reason is unconvincing.

With regard to factor number three, Buswell urges that complete and effective relief can be obtained from her Texas employer, LSW, and that her presence adds nothing to Appellee's potential recovery.[76] Buswell's argument misses the point. Appellant's suit is not just about a potential recovery—it is about accountability and the protection of Texas consumers. Chapter 541 of the Texas Insurance Code prevents insurance claim investigators, independent adjusters, and other persons

---

[73] *See* Appellant's Brief at 11-12.
[74] *See* Appellant's Brief at 11.
[75] *Guardian Royal Exch.*, 815 S.W.2d at 231 (*quoting McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957).
[76] *See* Appellant's Brief at 12.

engaged in the business of insurance in Texas from hiding behind their employer, or the insurer, by imposing individual liability on persons like Buswell for their wrongful acts and omissions in violation of the Insurance Code and Texas law. Buswell cannot escape individual liability under the Insurance Code and Texas law for her knowing conduct in the course of the investigation and settlement of Appellee's claim for life insurance policy benefits simply because she does not reside within this State.

Moreover, Buswell could reasonably foresee being sued in a Texas court and is not substantially or unfairly burdened by having to defend this suit in Texas. As to Appellant's final point—that this suit will be more efficiently prosecuted without the parties having to consult her schedule—this bears little, if any, weight on the scales of fair play and substantial justice. Apart from the fact that LSW's counsel has indicated that Buswell may serve as the designated corporate representative for LSW in the litigation, CR 72, Appellee does not believe that this argument warrants any further response.

***Texas has a significant interest in adjudicating this dispute***. Appellee contends that Texas has a "strong interest" in resolving lawsuits arising from events that occur in Texas.[77] Traditionally, regulation of the "business of insurance" has

---

[77] *See Royal MorgtageCorp.*, 41 S.W.3d at 736.

30

been delegated to the states by the federal government.[78] Texas state courts have implicitly recognized the role of that interest for purposes of determining personal jurisdiction.[79] The Texas Supreme Court wrote that "a state's regulatory interest in a certain area or activity such as insurance is an important consideration in deciding whether the exercise of jurisdiction is reasonable and that a state's regulatory interest may establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."[80]

Buswell has failed to meet her burden to prove a *compelling case* that the exercise of specific jurisdiction over her does not comport with traditional notions of fair play and substantial justice—it does.

The balance of the above factors shows that this is <u>not</u> one of those <u>rare cases</u> in "which the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Rather, the trial court's exercise of jurisdiction over Buswell will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.[81]

For all of these reasons, the trial court's decision that it has specific jurisdiction over Appellant Caroline Buswell is legally correct. In the unlikely event

---

[78] *See McCarran-Ferguson Act*, 15 U.S.C. § 1012.

[79] *See First National Bank of Libby, Montana v. Rector*, 710 S.W.2d 100, 106 (Tex. App.—Austin 1986, writ ref'd n.r.e.);*Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d 765, 773-74 (Tex. App.—Corpus Christi 1985 , no writ).

[80] *Guardian Royal*, 815 S.W.2d at 229.

[81] *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 359 (Tex. 1990).

that this Honorable Court is contemplating a decision to reverse the trial court's order rather than to affirm it, Appellant respectfully requests that it be given an opportunity to take the oral deposition of Caroline Buswell for the limited purpose of questioning Buswell regarding special appearance issues and to submit Appellee's Supplemental Brief.

## PRAYER

The trial court's order denying Appellant Caroline Buswell's special appearance should be affirmed. Appellee, The GWSPI Company LLC, Trustee of the Jeffery P. Blanchard 2013 Family Trust, respectfully pray this Honorable Court affirm the order of the trial court and award Appellee such other and further relief to which it may be justly entitled.

Respectfully Submitted:

BY:    /s/ J. Steve Mostyn
   J. Steve Mostyn
   jsmdocketefile@mostynlaw.com
   Gregory F. Cox
   gfcdocket@mostynlaw.com
   Caroline L. Maida
   clmaida@mostynlaw.com
   MOSTYN LAW
   3810 West Alabama St.
   Houston, Texas 77027
   713.714.0000 (Office)
   713.714.1111 (Facsimile)
   ***Counsel for Appellee, The GWSPI Company, LLC, Trustee of the Jeffrey P. Blanchard 2013 Family Trust***

## CERTIFICATE OF COMPLIANCE

This brief complies with the type and volume limitation and requirements of TEX. R. APP. P. 9.4(e) and TEX. R. APP. P. 9.4(i) because it contains 8,123 words, excluding the parts of the brief exempted pursuant to TEX. R. APP. P. 9.4(i)(1). This brief complies with these rules because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

 */s/ J. Steve Mostyn*
J. Steve Mostyn
Dated: August 31, 2015

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered on the parties listed below on the 31st day of August, 2015.

Andrew G. Jubinsky
andy.jubinsky@figdav.com
Lance V. Clack
Lance.clack@figdav.com
FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
214.939.2000 (Office)
214.939.2090 (Facsimile)
***Counsel for Appellant Caroline Buswell***

 */s/ J. Steve Mostyn*
J. Steve Mostyn
Dated: August 31, 2015